**LAW OFFICES OF FRANK LAGANO**
**BY: FRANK LAGANO, ESQ.**
One Gateway Center, Suite 2600
Newark, New Jersey 07102
(973) 679-7324
Attorney for Defendant

| | |
|---|---|
| **TRACY R. VENUS (Individually and as parent on behalf of disabled child K.V.) and K.V. (Minor)**<br><br>  Plaintiffs,<br><br>vs.<br><br>**SEVILLE FOOD, LLC d/b/a SEVILLE DINER**<br><br>  Defendant, Third-party plaintiff.<br><br>vs.<br><br>**L.A.L. Realty Co., (XYZ Corp. 1-10 and John/Jane Doe 1-10 all being fictitious appelations)**<br><br>  Third-party defendants | IN THE UNITED STATES DISTRICT<br><br>COURT FOR THE<br><br>DISTRICT OF NEW JERSEY<br><br>Docket No: 14-CV-02476-BRM-DEA<br><br>CIVIL ACTION |

**REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

ARGUMENT:

I. Plaintiff's Opposition Brief Relating To Standing Supports Further Defendant's Dismissal On Statute of Limitation Grounds

   a. Even assuming a continuing violation. The first instance of any alleged ADA discrimination based upon Plaintiff's own testimony for standing purposes would have had to occur at or around the completion of the diner renovation in or around 2005 or no more than two years after.

II. The Evidence Adduced Before This Court Shows No Injury In Fact to Plaintiff For Purposes of Standing or For Proving a Prima Facie Claim Warranting Any Injunctive Relief.

III. Plaintiff's Position That The 2010 Rather Than The 1991 ADAAG Guidelines Apply to the Handicapped Ramp Is Incorrect.

   a. The East Brunswick Safety Ordinance Rules Are But One of Many Factors To Support Defendant's Technical Infeasibility Argument.

IV. Plaintiff Misconstrues Dawn DeMartino's Affidavit And The Uncontroverted Evidence that Supports What Was in Fact Altered in 2004 Versus What Was Not.

V. Kusmick's Declaration to Oppose Defendant's Motion Ought to Be Considered A Sham Affidavit By This Court.

# TABLE OF AUTHORITIES

**Cases:**

Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04–6060 JEI, 2006 WL 3109966, at 5 (D.N.J. Oct. 30, 2006)

Allen v. Wright, 468 U.S. 737, 751 (1984)

Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)

Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority, C.A.3 (Pa.) 2008, 539 F.3d 199

hip Heightened Independence and Progress, Inc. v. Port Authority, 693 F.3d 345, (3rd Cir 2012)

Jiminez v. All American Rathskeller, Inc., 503 F.3d 247 (3d Cir. 2007)

Kirleis v. Dickie, McCamey & Chilcote, PC, 560 F.3d 156, 161–162 (3d Cir. 2009)

Lozano v. City of Hazleton, 620 F.3d 170 (3d Cir 2010)

Muha v. Rutgers, 2009 WL 698738

Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997)

Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir.2000)

## I. Plaintiff's Opposition Brief Relating To Standing Supports Further Defendant's Dismissal On Statute of Limitation Grounds

Ironically, Plaintiff's opposition brief along with its additional proofs for standing further support that this Court ought to dismiss Plaintiff's claim based on statute of limitation grounds. The "continuing violations doctrine" is inapplicable because as Plaintiff concedes for purposes of asserting standing, Plaintiff's alleged proximity, frequency of travel, and past patronage would require that the first alleged ADA violation of an injury in fact to Plaintiff would have or should have occurred shortly after the completion of the renovation to the diner in 2005.

Plaintiff's mother admits to residing in Franklin Township since 1999. (PCSMF ¶ 2) Her sister Debra Bassista lived in Morganville since 1991 and Plaintiff's mother's friend Ms. Harrington lived in Manalapan since 1998. (PCSMF ¶ 4 and 5) Plaintiff's mother also has dated Plaintiff's expert witness, Jeffrey Kusmick, R.A., since 2006, providing Plaintiff with the requisite knowledge and discovery that Plaintiff possesses a claim. (PCSMF ¶ 6) Plaintiff's mother has been employed at the same law firm since 1984. (PCSMF ¶ 3) Plaintiff's mother further states that she passes the Diner regularly, the food is good and affordable, and it is convenient to meet with them. (PSMF ¶ 14,16 and 17) Plaintiff's mother testifies that Route 18 is a direct route between Plaintiff's home and her sister and friend's home. (PSMF ¶ 13) Based upon all of the

foregoing facts Plaintiff knew or should of known of these alleged ADA violations and to have brought a claim at the earliest shortly after the renovations were completed in or around 2005 or the latest sometime in 2007. All the above adduced facts by Plaintiff do not change the fact that Plaintiff sat on her rights for over 9 years until filing a claim for relief in 2014.

If the Court is to accept as true Plaintiff's testimony for standing purposes, then it equally must accept that Plaintiff knew or should have known about these alleged ADA violations particularly any alleged barriers to access and brought such a claim well before the 9 year time span. Instead, Plaintiff chose to avail herself of such relief in 2014. The evidentiary record asserted by Plaintiff for purposes of standing contradicts any reasonable belief or basis that the first alleged injury to Plaintiff occurred only in 2012.

Plaintiff's very own opposition brief supports the application of the statute of limitations when it states that "in this case, the Plaintiff has established as part of their standing argument that they frequent the diner continually, have a familial association within the area, and will return to the diner. Each and every time the Plaintiff goes to the diner the Plaintiff is subject to the same discriminations identified in Plaintiff's complaint." Pl. Opp. Br. at p. 10. Accepting that as true the first discriminatory encounter would have been sometime in 2005 not in 2012.

> a. **Even assuming a continuing violation. The first instance of any alleged ADA discrimination based upon Plaintiff's own testimony for standing purposes would have had to occur at or around the completion of the diner renovation in or around 2005 or no more than two years after.**

Plaintiff's citation to Muha v. Rutgers is equally misplaced in support of its purported continuing violation theory as an exception to applying the statute of limitations. The Third Circuit uses a three part test to apply the continuing violation theory; (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency- whether the acts are recurring or more in the nature of isolated incidents; and (3) **degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.** See Muha v. Rutgers, 2009 WL 698738, at 9. See also Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)

The third factor in the continuing violation analysis exception is the degree of permanence. The 2005 completion date of the renovation was permanent and should have raised plaintiff's mother's awareness of her rights. "[W]hen the alleged actions of the defendants are of the type that should trigger [a plaintiff's] awareness of and duty to assert his or her rights, then there is less likelihood that a

continuing violation has occurred." Id. at 9; See also Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997).

Here, based on Plaintiff's assertions for standing, Plaintiff's mother was aware of or should have been aware of the alleged discriminatory acts that took place in 2005 and allegedly persist to the present day. Plaintiff's testimony acknowledges that the diner has been there a long time. See DSMF ¶15. Plaintiff further testified that she visited the diner "other times but could not recall" the exact dates prior to the 2012 date. See Pl. Opp. Br. pg. 13 ¶1. Finally, the Diner establishment according to Plaintiff has always been on a direct route to meet family and friends whose locations have not changed since long before the renovations ever took place in 2005. Thus, Plaintiff had a duty to assert her rights in 2005 or within 2 years after the renovations took place and she encountered such alleged barriers as opposed to 9 years later in 2014.

II. **The Evidence Adduced Before This Court Shows No Injury In Fact to Plaintiff For Purposes of Standing or For Proving a Prima Facie Claim Warranting Any Injunctive Relief.**

Plaintiff concedes that "ADA standing analysis should focus on whether the plaintiff suffered **an actual injury** rather than whether the statute was violated by the Defendants." See Pl Opp. Brief at pg. 11 ¶ 1.

Nor can Plaintiff K.V. by and through her mother and mother's boyfriend who is the architectural expert entitled to "raise all issues that affect those in

4

wheelchairs." Pl Opp Br. pg. 20 ¶ 2.  This would violate the doctrine of prudential standing. See <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984) <u>See also</u> Lozano v. City of Hazleton, 620 F.3d 170 (3d Cir 2010)

K.V. nor her mother can bootstrap the fact that simply because K.V. is in handicapped adaptable stroller akin to a wheelchair that K.V. has standing to assert all alleged violations that affect other people who are in wheelchairs.  Plaintiff advances no such class action claim on behalf of all disabled people or similarly situated disabled people.  The actual record before this Court reveals that K.V. individually has sustained no injury in fact as to any of the alleged architectural barriers Plaintiff advances in her complaint or by her expert.

Plaintiff is incorrect in simply asserting that Defendant's argument is that "Plaintiff is too disabled."   Defendant instead argues that Plaintiff's disability renders the application of some of the alleged violations within the 1991 ADAAG guidelines irrelevant and inapplicable to K.V. for purposes of determining standing with respect to an actual injury in fact or for granting injunctive relief.  Plaintiff's mother's boyfriend acting as an expert along with his findings of technical violations that do not relate to K.V. should not be considered and is irrelevant.  Therefore, whatever alleged ADAAG violations that remain, but do not relate to K.V. nor her particular disability does not warrant injunctive relief.

Defendant is therefore entitled to a determination that K.V. as a matter of law has not been denied the benefit of full and equal access to the Diner. Nowhere does the ADA or any Court provide that a Defendant can be held strictly liable merely because a disabled person's expert has proven a technical violation under the ADAAG guidelines as being dispositive alone with nothing more. Plaintiff's use and citation of <u>Access 4 All v. Absecon Hospitality Corp</u>., 2006 WL 3109966 (D.N.J. 2006) as support is not only distinguishable, but also misleading. First, the portion cited by Plaintiff relates to associational standing principles by the co-plaintiff, Access 4 All, Inc., and is inapplicable to this case. Removing the associational standing component, the case actually supports Defendant's position that in order to have standing and seek prospective relief the alleged accessibility barriers must relate to K.V.'s disability and K.V. does not have standing with respect to barriers unrelated to her disability. <u>Id.</u> at 25-26. Plaintiff's citation to the 8th Circuit <u>Steger</u> case opinion supports Defendant's position further. The <u>Stegar</u> court held that even if a disabled blind person does not encounter all architectural barriers related to his disability he is not foreclosed from advancing those additional ones so long as it relates specifically to his disability of being blind.

In the instant case, Plaintiff cannot walk and is confined to a stroller at all pertinent times, therefore, the exterior outside steps and any alleged violation or

analysis to determine an injury in fact is moot as to that particular architectural element.  Plaintiff concedes that Plaintiff utilizes a handicapped accessible stroller yet without any factual support in its opposition brief argues that the "stairs may be necessary to assist Plaintiff with negotiating the architectural barrier of overcoming the height difference of the parking lot and the diner entrance in the event the ramp is unavailable or otherwise not accessible." Plaintiff Opp Br. pg. 48 ¶ 1.  Any such unavailability is not present before this court and is hypothetical.  Assuming arguendo such hypothetical unavailability of the ramp this would still require, based upon Plaintiff's mother's own testimony, that she pick K.V. up out of the stroller and carry her up the exterior stairs.   The railings would never be utilized by K.V. as she cannot use the railings as per her mother's own testimony based upon her disability (DSOF ¶ 70 74) or by Tracy Venus for that matter because she would be carrying K.V. up the stairs with both arms.  Thankfully, there is and always will be a ramp to obviate such a hypothetical occurrence from happening.

Each of the alleged ADAAG violations must be applied specifically to Plaintiff and her particular disability.   This is necessary to determine not only standing of an injury in fact, but also whether K.V. truly encountered any architectural barriers to determine whether she was actually discriminated against and deprived of "full and equal enjoyment of the goods, services… or accommodations" at the Diner.  Only the ADAAG guidelines that apply to

Plaintiff's specific disability and not just the fact that K.V. is merely in a wheelchair is dispositive for this Court's analysis. No court has held that being defined as disabled means that a person whose disability is confined to a wheelchair can then utilize portions of the ADAAG that don't apply to their particular disability. For instance, a paraplegic wheelchair dependent person defined as being disabled cannot use portions of the ADAAG guidelines related to the use of braille signage for a blind person just because they both meet the definition of being disabled. The same holds true for guidelines related to a deaf person as well.

K.V. is severely disabled and Plaintiff concedes that "K.V. cannot access anywhere unless Tracy Venus assists K.V." Pl. Opp. Br 20 ¶ 1. But, irrespective of Tracy Venus assisting K.V., her daughter's limitations and present disability based upon Tracy Venus' own testimony state that K.V. will never be able to open a door herself (DSMF ¶59), use stairs or the stair/ramp handrails (DSMF ¶70, 74). Therefore, even if these alleged ADAAG violation do in facts exist there is no injury in fact to K.V. that is capable of causing a future injury to K.V. and warrants injunctive relief to correct and/or remove such architectural elements at the Diner.

Plaintiff fails to acknowledge that presently the record before this Court, there exists no architectural barriers that prevent K.V. from entering the diner with the assistance of her mother and to: 1) sit at 75% of the diner's dining room area;

2) access the unaltered bathroom vestibule space; 3) access the altered woman's bathroom space and the handicapped woman's bathroom stall; and 4) utilize the woman's bathroom sink to wash her hands and finally 5) eat and enjoy as testified to previously by her mother on the many occasions they visited the Diner.

### III. Plaintiff's Position That The 2010 Rather Than The 1991 ADAAG Guidelines Apply to the Handicapped Ramp Is Incorrect.

Defendant seeks summary judgment with respect to the fact that during the 2004 renovations any alteration particularly with respect to the ramp element was made compliant to the maximum extent feasible based upon existing site conditions and the structure of the building as built on or about 1969.

The Third Circuit has determined that any technical infeasibility argument with respect to the ADA's obligations is triggered at the time the construction is undertaken, not after it has been completed and litigation has commenced. See hip Heightened Independence and Progress, Inc. v. Port Authority, 693 F.3d 345, at 353 (3rd Cir 2012)

Consequently, to assess whether Defendant has violated the ADA this court must evaluate the circumstances at the time of construction. Questions of feasibility of a proposed ADA-compliant modification, then, are directed not toward whether it would be feasible to execute the modification ***today*** as the

Plaintiff contends, but rather whether it would have been feasible back in 2004 under the 1990 ADAAG guidelines.

Thus, Plaintiff's opposition brief is incorrect in its position that "any solution to the ramp issue must be done in accordance with the current regulations, which are the 2010 ADAAG." Pl. Opp. Br. at pg. 47. Given that Plaintiff concedes that their solution violates, the length of the ramp under the 1991 ADAAG guidelines and it being technically non-compliant further supports as a matter of law Defendant's technical infeasibility argument and judgment as a matter of law on this issue.

### a. The East Brunswick Safety Rules Are But One of Many Factors To Support Defendant's Technical Infeasibility Argument.

Plaintiff is also incorrect in its assertion that the safety rules promulgated under the East Brunswick Township, which require minimum widths for driveways is irrelevant. See Pl Opp Br. P. 46 Plaintiff's support for this is that, "local officials do not have authority to enforce the ADA on behalf of the federal government." Id. However, this citation has nothing to do with local building authorities and/or their officials, as well as a professional architect's affirmative obligation to abide by all local, State and Federal safety standards, rules. Regulations and guidelines.

The Diner's site conditions along with the physical building constraints prohibited modification and full compliance in 2004 as to the ramp. Plaintiff's solution whether applied in 2004 or presently, violate the local safety standard with respect to the minimum width for cars and trucks to move around the facility and therefore make Plaintiff's proposal technically infeasible as a matter of law.

The <u>hip</u> Court found that "technical infeasibility also encompasses situations where 'other existing physical or site constraints prohibit modification.'" See <u>hip Heightened Independence and Progress, Inc. v. Port Authority</u>, 693 F.3d 345, at 355 (3rd Cir 2012) The <u>hip</u> court goes on to further state that "49 C.F.R. § 37.43(b) (emphasis added); *see* 56 Fed.Reg. at 35, 428 ('[E]xisting physical or site constraints prohibiting full and strict compliance ... can result from legitimate legal requirements (e.g., a right of way agreement preventing construction of a ramp in front of a building).'). The ability to comply with safety standards relates to 'the nature of an existing facility.' Nevertheless, we think it likely that where compliance with a safety standard is required by law, a modification that would not comply with that safety standard is not 'feasible.'" <u>Id</u>. at 357.

Defendant provides evidence that the existing physical building and site constraints such as the variance provided in 1970 when the building was first built is supportive of its technical infeasibility argument at the time the renovations were made in 2004, pertaining to the ramp. The driveway corridor in question is

exceptionally narrow to begin with based upon the existing variance and existing site constraints. Plaintiff's proposal to move the location of the handicapped parking , as was contemplated in 2004, would also cause significant safety issues to handicapped pedestrians having to cross the driveway corridor in order to access the entrance of the diner. Defendant's expert confirms this in his expert report, and agrees with the letter submitted to the township officials by the architect at the time in 2004 and the ultimate agreement by township officials of this decision as well. This agreement was to ensure the ramp's 1:12 slope was ADA compliant, and to extend the length of the ramp an additional 9 feet without an intermediate landing as acceptable and the safest possible solution at the time. Defendant nor its professional have the benefit of updated 2010 ADAAG guidelines that may have removed some of the more onerous requirements from that of the 1991 ADAAG. Furthermore, the building not only acts as a safety barrier for handicapped people using the presently existing ramp but the location of the existing handicapped parking spaces are admittedly much closer than Plaintiff's proposed location to the diner entrance.

Plaintiff also fails to address the technical noncompliance of the proposed ramp's length pursuant to the then controlling 1991 ADAAG guidelines and its direct impediment on Defendant's ability to unload and load pallets of food from large delivery trucks on a daily basis. These delivery trucks prevent Plaintiff or

any handicap person from also getting to the bottom landing and accessing the ramp because the trucks would block this extraordinarily narrow driveway corridor where Plaintiff proposes to relocate the handicap parking spaces.

**IV.　Plaintiff Misconstrues Dawn DeMartino's Affidavit And The Uncontroverted Evidence that Supports What Was in Fact Altered in 2004 Versus What Was Not.**

The salad bar dining room area was not altered and/or renovated in 2004. None of the booths were replaced, the wood floor is the same and the salad bar element existed and was constructed sometime in the late 1980's. The photos taken by Plaintiff's expert and used in support of Defendants' motion clearly show that all of the booths in the salad bar dining room area where the wood floor is as well as the rear elevated dining room with the 5 ½ inch step up are all the same.

All the booths and the portion of the dining room area space that was in fact altered and renovated in 2004 is ADA compliant and K.V. is not denied equal access and enjoyment of this space. Plaintiff cannot nor does the ADA support the that just because Defendant replaced one element, the carpet with a new one, to the rear dining room area, this then somehow triggers the requirement that the step must be removed. First, the dining room space was an addition built in the 1980's before the ADA existed. Second, the step up was required to be constructed because of the basement below it. Third, the seats in this space comprise less than

30% of the total seating capacity at the Diner not requiring accessibility to this space pursuant to the ADA.  Fourth, the only alteration to this area was the replacement of the carpet element.  This alone does not trigger the barrier removal of the step element nor could the removal of the step element be carried out in 2004 or at the present time.  Plaintiff's expert erroneously assumes and relied upon the fact that there was a complete and utter renovation and that the rear dining room addition area was carried out in 2004 as opposed to 1987.  The replacement of the carpet element alone to the rear dining room area space in 2004 does not trigger the alteration requirement of making the entire rear dining room space area accessible.  Not only does the 25% percentage of customer seating to this dining room space area obviate such a requirement, but also the fact that no other changes were carried out to this particular space to trigger the ADA alteration standard ever being applied in 2004.

**V.    Kusmick's Declaration to Oppose Defendant's Motion Ought to Be Considered A Sham Affidavit By This Court.**

Jeffrey Kusmick's four-day deposition testimony transcript, the exhibits attached to this motion and testified to by Mr. Kusmick, his expert report and notes contained in his file should be the only evidence used as being dispositive for granting Defendant's motion.  No after the fact concocted declaration to oppose Defendant's summary judgment motion and to create the appearance of a material

issue of fact to defeat summary judgment should be countenanced by this Court. See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (deposition is more reliable because of opportunity for cross-examination and because affidavits are usually drafted by counsel, "whose familiarity with summary judgment procedure may render an affidavit less credible"). See also Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 251–254 (3d Cir. 2007) ("a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her sworn testimony without demonstrating a plausible explanation for the conflict"). See also Kirleis v. Dickie, McCamey & Chilcote, PC, 560 F.3d 156, 161–162 (3d Cir. 2009) ("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment,"

Mr. Kusmick's declaration specifically pg. 4 ¶ 11-12 is improper. None of his notes nor any of his deposition testimony references trigonometry. It is a blatant attempt to over complicate and have this Court believe that some type of expertise is required to understand the clear floor space requirements under the woman's vanity sink as well as the requisite knee and toe clearance space.

As for Plaintiff's CSMF particularly ¶ 170. The exhibit was marked at Mr. Kusmick's deposition as Exhibit 31. Defendant scanned the document in black and white, hence why the Defense Exhibit Sticker on the bottom right hand corner is unclear. A color scanned copy of this same exhibit is attached hereto. See

Lagano Cert. In any event, this document is the technical manual for the model of sink proposed by Plaintiff's expert. Plaintiff during his deposition circled the portion of page 2 of this exhibit as well. Combining the 1991 ADAAG guideline diagram as to the requisite clear floor space and knee and toe clearance, the diagram marked at Plaintiff's expert's deposition as Exhibit 31, Kusmick's deposition testimony, Kusmick's field notes in addition to the photos at the Diner there remains no question of material fact that there is any architectural barrier or ADAAG violation as it relates to both the clear floor space underneath the vanity sink as well as the knee and toe clearance space. Nor can a sham affidavit by Mr. Kusmick especially when the declaration does not explain a plausible explanation for such a discrepancy will be sufficient enough to create an issue of material fact.

Kusmick's declaration to oppose this motion as it relates to the salad bar dining space and rear elevated dining room space is equally unavailing. First, Mr. Kusmick never provides these solutions in his initial report to enable Defendant's expert an opportunity to respond. Second, his deposition testimony contradicts these conclusory unsupported opinions as stated within his declaration. Mr. Kusmick does not explain how given the fact that he never took measurements at the time of his inspection that such a proposed solution is viable. Or how pictures of the space depict that the projection of this proposed ramp would impede and necessitate the removal of an entire booth let alone reconcile how at the time of his

deposition he testified that that no such booth existed.  These conclusory statements without additional facts and evidence to support his opinions as well as failing to reconcile his prior testimony to this declaration especially when actual pictures disprove him.  Mr. Kusmick's drawings of such ramp with additional photos that provide context to elements not scene clearly illustrate that such a proposal would impede and obstruct egress and ingress to a heavily trafficked area by the kitchen door.

        Respectfully Submitted,

        **LAW OFFICES OF FRANK LAGANO**

        <u>s/ FRANK LAGANO, ESQ.</u>
        One Gateway Center, Suite 2600
        Newark, New Jersey 07102
        (973) 679-7324
        Attorney for Defendant

Dated: