NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                       :
TRACY R. VENUS (Individually and as    :
Parent on behalf of disabled child, K.V.) :
and K.V. (Minor),                      :
                                       :        Civil Action No. 14-2476-BRM-DEA
                    Plaintiffs,        :
                                       :
        v.                             :
                                       :
SEVILLE FOOD, LLC d/b/a                :
SEVILLE DINER,                         :
                                       :        **OPINION**
                    Defendant.         :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Plaintiffs Tracey Venus and K.V.'s (collectively, "Plaintiffs")

Motion for Summary Judgment (ECF No. 46) and (2) Defendant Seville Food, LLC's ("Seville")

Motion for Summary Judgment (ECF No. 58). These motions are opposed. Pursuant to Federal

Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth

below, Plaintiffs' Motion for Summary Judgment is **DENIED** and Seville's Motion for Summary

Judgment is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND
### A. FACTUAL BACKGROUND

This action arises out of Plaintiffs' lawsuit against Seville, owners of Seville Diner (the

"Diner"), seeking injunctive relief ordering Seville to comply with the Americans with Disabilities

Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). (Compl. (ECF No.

1).) Plaintiff K.V. is a minor prematurely born with several disabilities, including but not limited

to: (1) cerebral palsy in her lower extremities; (2) seizure disorder; (3) developmental delays; and

(4) visual impairment, requiring adult assistance and care. (Decl. of Tracy Venus (ECF No. 46-4) ¶ 5.) K.V. was also born with cortical blindness and can only see objects one foot away. (Dep. of Tracey Venus (ECF No. 46-12) at 14 (pg. 52).) K.V.'s disabilities have caused her many limitations. For example, K.V. cannot walk and is confined to a stroller (*id.* at 15 (pgs. 55-56)); is not verbal (*id.* at 8 (pg. 28)); cannot use the bathroom and must wear a diaper (*id.* at 13 (pg. 47)); and is unable to hold onto handrails or hang her coat (*id.* at 15 (pgs. 54-55)).

Plaintiff Tracey Venus is K.V.'s mother and is not disabled. (Def.'s Counter Statement of Material Facts (ECF No. 54) ¶ 1; Pl.'s Reply to Def.'s Counter Statement of Facts (ECF No. 68-2) ¶ 1).) Plaintiffs live at 25 Park Lane in Franklin Township. (Pl.'s Statement of Facts (ECF No. 46-2) ¶ 1; Def.'s Resp. to Pl.'s Statement of Facts (ECF No. 54-1) ¶ 1).) The Diner is located at 1035 Highway 18 South in East Brunswick, New Jersey. (ECF Nos. 46-2 ¶ 2 and 54-1 ¶ 2.) The Diner was constructed in approximately 1969 (Def.'s Statement of Material Facts (ECF No. 60) ¶ 78; ECF No. 68-2 ¶ 78) and underwent renovations and alterations in 2004. (Aff. of Dawn Demartino (ECF No. 55) ¶ 6.) The record is unclear as to what parts of the Diner were renovated and/or altered. The Diner is approximately seventeen (17) miles from Plaintiffs' residence. (ECF Nos. 46-2 ¶ 3 and 54-1 ¶ 3.)

Plaintiffs visited the Diner on three separate occasions: (1) sometime in 2012; (2) in April 2013; and (3) in the summer of 2015, approximately one year after the lawsuit was filed. (ECF Nos. 54 ¶ 14 and 68-2 ¶ 14.) Plaintiffs' first visit was sometime in 2012, when Plaintiffs met Tracey Venus's friend, who lives in Manalapan, at the Diner. (ECF No. 46-12 at 3 (pgs. 8-9).) Tracey Venus parked her vehicle in the handicapped spot, removed K.V's stroller from the vehicle, placed K.V. in her stroller, and "wheeled her up the ramp." (*Id.* at 4 (pg. 13).) Tracey Venus's friend met Plaintiffs in the parking lot and opened the door to the Diner. (*Id.* at 5 (pg. 14).)

Tracey Venus could not remember what K.V. ate, if anything, or whether K.V. utilized the restroom. (*See id.* at 5 (pgs. 15-16).) In fact, Tracey Venus could not recall ever changing K.V.'s diaper at the Diner. (*Id.* at 13 (pgs. 47-48).) Notably, K.V. cannot use the bathroom without Tracey Venus or feed herself without assistance. (*Id.* at 5 (pg. 16) and 14 (pgs. 51-52).) Even so, K.V. can only eat soup, potato chips, french fries, or mozzarella sticks at the Diner. (*Id.* at 5 (pg. 15) and 14 (pg. 51).) Further, K.V. does "not eat salad." (*Id.* at 13 (pg. 47).)

Plaintiffs' second visit was in April 2013, when Plaintiffs visited the Diner with K.V.'s older non-disabled sister on their way to Tracey Venus's sister's house. (*Id.* at 6 (pg. 18).) Tracey Venus's sister lives in Morganville, New Jersey. (*Id.*) Tracey Venus alleges Route 18, where the Diner is located, is a direct route to her sister's and friend's residences. (*Id.* at 9 (pg. 32).) For a second time, Tracey Venus parked in the handicapped parking spot, got the stroller out, placed K.V. in the stroller, and went up the ramp. (*Id.* at 6 (pg. 21).) Although Tracey Venus made it up the ramp, she noted "the bottom of the ramp is not very straight" and "was a little steep." (*Id.*) Further, she alleged "it was so hard to open the door" (*id.* at 8 (pg. 29)) and "opening the door [was] a little tough for [her] because when you do the pulling you have to hold the door open and get the stroller through, that's where it's difficult." (*Id.* at 6 (pg. 21) to 7 (pg. 22).) While the record is unclear, it suggests that, at some point during their visit in April 2013, Tracey Venus forgot to lock K.V.'s stroller and encountered some difficulty with the ramp. (*Id.* at 11 (pg. 40).)

Once inside, Plaintiffs were seated in the rear of the dining room, which is slightly elevated, in a booth. (*Id.* at 8 (pg. 26).) Tracey Venus had to "tip" K.V.'s stroller up to get her onto the platform. (*Id.*) Tracey Venus could not recall if there were any other booths or seats available. (*Id.* at 8 (pg. 27).)

On November 22, 2013, Plaintiffs sent Seville a letter notifying it of alleged ADA and NJLAD violations and demanding Seville to comply with the ADA and NJLAD. (ECF No. 46-15.) On November 26, 2013, Seville responded by requesting Plaintiffs' architect's report regarding the alleged violations. (ECF No. 46-16.) On December 3, 2013, Plaintiffs provided Seville with Jeffrey Kusmick, R.A.'s ("Plaintiffs' expert" or "Mr. Kusmick") report. (ECF No. 46-17.) Mr. Kusmick and Tracey Venus are in a romantic relationship and have been dating since 2006. (ECF No. 68-2 ¶ 6.)

Plaintiffs' third and final visit was in the summer of 2015, after the filing of this lawsuit, when Plaintiffs met Tracey Venus's friend at the Diner for a second time. (*Id.* at 9 (pg. 33).) Again, Tracey Venus parked in the handicapped parking spot and escorted K.V. up the ramp. (*Id.* at 10 (pg. 35).) Tracey Venus had no trouble opening the door because her friend opened it for her. (*Id.* at 8 (pg. 36).)

### B. PROCEDURAL BACKGROUND

On April 17, 2014, Plaintiffs commenced this action alleging the Diner fails to comply with ADA, NJLAD and applicable regulations including but not limited to:

> a.     The existing exterior ramp height leading to the left side front of the entry vestibule requires an intermediate landing;
> b.     The landing at the top of the ramp is too small in relation to the swing out entry doors;
> c.     The landing at the bottom of the ramp is not level and continues to slope downwards past the end of the handrail;
> d.     The handrail exceeds the maximum permitted height;
> e.     The handrail does not extend properly beyond the ramp's top and bottom landings;
> f.     The handicap accessible parking spaces are separated from the handicap accessible ramp by a sidewalk that is elevated up from the level of the existing parking lot grade;
> g.     The handicap accessible parking spaces do not provide the required access aisles nor the required accessible route from the access aisles to the bottom of the handicap accessible ramp;

  h. The existing ground surface of the parking lot appear to exceed the maximum permitted slope;

  i. Non-compliant door approaches to the men's and women's bathrooms; and

  j. Non-compliance with the dispersion requirements for handicapped accessible tables throughout the dining areas.

(*Id.* ¶¶ 21-22.) Plaintiffs seek injunctive relief against Seville ordering it to make "all readily achievable alterations . . . as required by the ADA, NJLAD, and their regulations." (*Id.* ¶ 36.) On September 25, 2014, Plaintiffs filed a Request to Enter Default against Seville for failure to defend. (ECF No. 5.) On September 26, 2014, the Clerk's Office entered a notice of Default as to Seville. Thereafter, on October 6, 2014, Seville filed a Motion to Vacate Default. (ECF No. 6.) On December 17, 2014, the Court granted the Motion to Vacate Default and ordered Seville to respond to Plaintiffs' Complaint. (ECF No. 10.) Seville filed an Answer on January 15, 2015. (ECF No. 11.)

  Thereafter, the parties engaged in discovery and both retained expert witnesses. Plaintiffs retained Mr. Kusmick and Seville retained John Hare, R.A., P.E., P.P. ("Mr. Hare"), a registered architect, professional engineer, and professional planner. (Decl. of Jeffrey W. Kusmick (ECF No. 46-28); John Hare's Report (ECF No. 46-33).) Plaintiffs' expert found the following portions of the Diner were not compliant with the ADA or NJLAD: (1) rear/back elevated dining area; (2) rear dining area adjacent to the self-serve salad bar; (3) self-serve salad bar island; (4) sales counter; (5) doors opening force; (6) coat closet area; (7) public bathrooms' vestibule area; (8) public women's bathroom; (9) public men's bathroom; (10) exterior pedestrian ramp; (11) exterior accessible route and handicap parking spaces; and (12) accessible stairs. (*See* Jeffrey Kusmick's Report (ECF No. 46-29).) Seville's expert contests Mr. Kusmick's report almost entirely and finds the Diner is either in compliance with the ADA and NLAD or compliant to the maximum extent feasible. (ECF No. 46-33.)

On August 26, 2016, Plaintiffs filed a Motion for Summary Judgment. (ECF No. 46). Seville filed an opposition on September 23, 2016. (ECF Nos. 54 to 56.) On September 24, 2016, in lieu of filing a cross-motion, Seville filed a Motion for Summary Judgment. (ECF Nos. 57 to 59.)[1] All motions are opposed.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

---

[1]Seville's Motion for Summary Judgment is essentially a restatement of its Opposition to Plaintiffs' Motion for Summary Judgment and could have been filed as a cross-motion. (*Compare* ECF No. 60-1 *with* ECF No. 63.) Seville only raises one new argument, that Plaintiffs' Complaint should be dismissed under the statute of limitations. (ECF No. 60-1 at 4-6.) Consequently, Plaintiffs' Opposition to Seville's Motion for Summary Judgment is almost identical to her Reply brief to Seville's Opposition. (*Compare* ECF No. 68 *with* ECF No. 68-1.)

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. Standing

Plaintiffs argue both Tracey Venus and K.V. have standing to purse all alleged ADA and NJLAD violations at the Diner. Specifically, the Complaint, expert reports, and Plaintiffs' Motion allege the following violations: (1) rear/back elevated dining area; (2) rear dining area adjacent to the self-serve salad bar; (3) self-serve salad bar island; (4) sales counter; (5) doors opening force; (6) coat closet area; (7) public bathrooms' vestibule area; (8) public women's bathroom; (9) public men's bathroom; (10) exterior pedestrian ramp; (11) handicap parking spaces; and (12) any stairs. (*See* ECF Nos. 46-1, 46-29, and 46-3 at 10-17.) Seville argues Tracey Venus does not have standing to bring individual claims because she is not disabled and only K.V. has standing to bring forth claims relating to her disability. (ECF No. 63 at 5 to 15 and ECF No. 60-1 at 6 to 20.)

In order to set forth a viable claim in federal court, a plaintiff must satisfy both the Article III constitutional minimum of a case or controversy and prudential considerations set by the courts. *Access 4 All, Inc. v. 539 Absecon Blvd., L.L.C.*, No. Civ. 05-5624 (FLW), 2006 WL 1804578, at *2 (D.N.J. June 26, 2006). "In addition to Article III 'case or controversy' requirement, prudential limitations stand as judicially imposed limitations on a court's power to hear and decide a case." *Id.* "Prudential considerations include a prohibition on a plaintiff's ability to bring a 'generalized' grievance that is shared equally with a large class of citizens and that a plaintiff must assert his own legal rights and interest and not rely on the claims of others." *Id.*

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had

the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Plaintiff, as the party invoking federal jurisdiction, "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561); *see also Spokeo*, 136 S. Ct. at 1547 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). At the summary judgment stage, a plaintiff cannot rest on mere allegations to establish standing, "but must 'set forth' by affidavit or other evidence, 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)).

Furthermore, where, as here, a plaintiff seeks prospective injunctive relief, she must demonstrate a "real and immediate threat of injury in order to satisfy the injury in fact requirement." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 342 (D.N.J. 2003) (citations omitted). Past exposure to illegal conduct does not in itself present a case or controversy regarding injunctive relief. *Id.* "In order to obtain standing for prospective relief, the plaintiff must 'establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]'" *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *Lyons*, 461 U.S. at 105,

667). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day will be—do not support a finding of the 'actual or imminent' injury . . . ." *Clark*, 255 F. Supp. 2d at 342 (quoting *Lujan*, 504 U.S. at 564). These principles also apply in the context of Title III of the ADA. *Id.* "ADA standing analysis should focus on whether the plaintiff suffered an actual injury rather than whether the statute was violated by the Defendants." *Louisiana Counseling & Family Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. Civ. A. 08-6143, 2011 WL 3273548, at *4 (D.N.J. July 27, 2011). Courts have considered the following four factors in determining whether a Title III plaintiff has alleged a threat of future injury that is sufficiently concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the plaintiff's frequency of nearby travel; and (4) the definiteness of the plaintiff's plan to return." *Wittmann v. Island Hosp. Mgmt.*, No. Civ. 09-3698 RMB KMW, 2011 WL 689613, at *5 (D.N.J. Feb. 18, 2011).

As a preliminary matter, the Court finds Plaintiff Tracey Venus may bring a discrimination claim against Seville on behalf of her minor daughter. However, she does not have standing to assert personal claims based on alleged violations of K.V.'s rights. *See Cottrell v. J & R Disc. Liquor Gallery, Inc.*, Civ. No. 08-5418, 2009 WL 1085729, at *3-4 (D.N.J. Apr. 21, 2009) (finding parents did not have standing to maintain personal ADA claim based upon alleged discrimination against disabled child because parents are not disabled, which is a required element of ADA discrimination claim); *D.A. v. Pleasantville Sch. Dist.*, Civ. No. 07-4341, 2009 WL 972605, at *8 (D.N.J. Apr. 6, 2009) (dismissing parents' personal discrimination claims under ADA and Rehabilitation Act because parents "do not have standing to pursue their own claims against the District Defendants arising out of the alleged discrimination against [child]"). In order to establish an injury in fact, Tracey Venus must have suffered an invasion of a legally protected interest.

*Lujan*, 504 U.S. at 560. Tracey Venus is not disabled, and therefore has not suffered an invasion of a legally protected interest. (ECF No. 46-12 at 16 (pg. 59).) Accordingly, summary judgment is **GRANTED** in favor of Seville as to all claims asserted by Tracey Venus on her own behalf.

K.V. has standing to prosecute some of her claims.[2] K.V. throughout her briefs, expert reports, and a chart attached to the Notice of Motion contends the following portions of the Diner are not compliant with the ADA and caused her injury: (1) rear/back elevated dining area; (2) rear dining area adjacent to the self-serve salad bar; (3) self-serve salad bar island; (4) sales counter; (5) doors opening force; (6) coat closet area; (7) public bathrooms' vestibule area; (8) public women's bathroom; (9) public men's bathroom; (10) exterior pedestrian ramp; (11) handicap parking spaces; and (12) any stairs. (Pl.'s Not. of Mot. (ECF No. 46-1); ECF No. 46-29; *see generally* Pl.'s Reply to Def.'s Mot. (ECF No. 68); ECF No. 46-3; and ECF No. 68-1.) The Court finds K.V. has standing only as to the following claims: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) doors opening force; (6) handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp.

"The jurisprudence of standing is littered with cases in which courts have dismissed actions because the injury was not personal (i.e., it accrued to third parties), or the injury was not concrete (i.e., it was too theoretical), or the injury was not actual or imminent (i.e., it was speculative) . . . ." *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999). A plaintiff's claimed injury must be "personal" to the plaintiff and cannot be "an injury from generalized discrimination

---

[2] As previously stated, because K.V. is a minor Tracey Venus may assert claims on K.V.'s behalf. Accordingly, for the remainder of this opinion when the Court references K.V., it also means Tracey Venus on behalf of K.V. Further, when the Court references "Plaintiffs" it means K.V. and Tracey Venus on K.V.'s behalf, not Tracey Venus individually.

against disabled person or suing on behalf of the disabled[.]" *Id.* Here, the evidence presented and uncontroverted facts establish even if the self-serve salad bar island, sales counter, coat closet area, stairs, and public men's bathroom were ADA and NJLAD compliant K.V. could not and would not utilize them.

The testimony from Tracey Venus's deposition illustrates K.V. could not go to the salad bar and pick her own food, nor could she point to what she wanted at the salad bar because "[s]he doesn't understand what it is." (ECF No. 46-12 at 14 (pg. 52).) Further, K.V. does "not eat salad." (*Id.* at 13 (pg. 47).) For similar reasons, K.V. would never be able to hang her own coat or utilize the sales counter. In fact, Tracey Venus admitted she hangs K.V.'s coat for her. (*Id.* at 15 (pgs. 54-55).) K.V. is also "not a walker" and is in a stroller and would never be able to utilize the stairs. (*Id.* at 15 (pgs. 55-56).) Lastly, both K.V. and Tracey Venus are females and could not utilize the men's bathroom. Plaintiff's argument that if a male caregiver is caring for K.V. on a particular day K.V. would need to use the men's bathroom is speculative. (*See* ECF No. 68 at 16.) Tracey Venus accompanied K.V. every time Plaintiffs visited the Diner. There is no evidence demonstrating that a male caregiver ever cared for K.V., or more specifically ever took or intended to take K.V. to the Diner. Contrarily, Tracey Venus has admitted to being K.V.'s sole caretaker "because if something happens [she] doesn't want anybody else responsible for her." (ECF No. 46-12 at 11 (pg. 41).) Thus, K.V.'s claim as to the salad bar island, sales counter, coat closet area, stairs, and public men's bathroom are not "personal" to K.V. *Doe*, 199 F.3d at 153. Accordingly, summary judgment is **GRANTED** in favor of Seville as to all claims asserted by K.V. regarding ADA and NJLAD violations with the salad bar island, sales counter, coat closet area, stairs, and public men's bathroom.

However, the Court finds K.V. has standing to pursue the following claims at trial: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) doors opening force; (6) the handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp. K.V. has set forth sufficient evidence and specific facts, which for the purposes of the summary judgment motion this court must take as true, *see Lujan*, 504 U.S. at 561, demonstrating she has suffered an injury in fact as to the above claims. In the Complaint, K.V. alleges she is disabled and "born with several disabilities, including but not limited to: a) cerebral palsy in her lower extremities, b) seizure disorder, c) developmental delays, and d) visual impairment, thereby requiring continuing adult assistance and care from her mother or others." (ECF No. 1 ¶ 10.) The Complaint further states K.V. is confined to a non-motorized handicapped adaptable stroller for mobility outside of her residence. (*Id.* at ¶ 11.) Additionally, the Complaint states the Diner does not comply with ADA, NJLAD and applicable regulations including:

> a.      The existing exterior ramp height leading to the left side front of the entry vestibule requires an intermediate landing;
> b.      The landing at the top of the ramp is too small in relation to the swing out entry doors;
> c.      The landing at the bottom of the ramp is not level and continues to slope downwards past the end of the handrail;
> d.      The handrail exceeds the maximum permitted height;
> e.      The handrail does not extend properly beyond the ramp's top and bottom landings;
> f.      The handicap accessible parking spaces are separated from the handicap accessible ramp by a sidewalk that is elevated up from the level of the existing parking lot grade;
> g.      The handicap accessible parking spaces do not provide the required access aisles nor the required accessible route from the access aisles to the bottom of the handicap accessible ramp;
> h.      The existing ground surface of the parking lot appear to exceed the maximum permitted slope;
> i.      Non-compliant door approaches to the men's and women's bathrooms; and

> j. Non-compliance with the dispersion requirements for handicapped accessible tables throughout the dining areas.

(*Id.* ¶¶ 21-22.) Tracey Venus' deposition testimony demonstrates K.V. visited the Diner on three separate occasions, in 2012, April 2013, and in the summer of 2015. (ECF No. 46-12 at 3 (pg. 7).) It further specifies Tracey Venus utilized the ramp to get K.V. inside the Diner, but that "the bottom of the ramp [was] not very straight" and "was a little steep." (ECF No. 46-12 at 6 (pg. 21).) Tracey alleges difficulty going up the ramp. (*Id.*) Plaintiffs' expert's report alleges numerous specific ADA violations addressing the rear/back elevated dining area, the rear dining area adjacent to the self-serve salad bar, the doors opening force, the public bathrooms' vestibule area, the public women's bathroom, and the exterior pedestrian ramp and parking spaces (*See* ECF No. 46-29.)

Although Tracey Venus admits K.V. never utilized the restroom at the Diner, K.V. still has standing to bring claims as to the restroom. "The ADA does not require an individual asserting a claim to participate in a 'futile gesture' if she has actual knowledge of a defendant's failure to comply with ADA provisions." *Access 4 All, Inc.*, 2006 WL 1804578, at *4. "It is sufficient for a plaintiff to allege that [she] has actual knowledge of architectural barriers and that but for noncompliance with ADA provisions, [she] would avail [herself] of the defendant's goods and services." *Id; see e.g., Clark v. McDonald's Corp.*, 213 F.R.D. 198, 229 (D.N.J. 2003) (finding that a plaintiff was deterred from patronizing defendant's restaurant due to known violations of ADA and that such deterrence was sufficient to constitute an "actual injury"). Here, it is sufficient for Tracey Venus to allege that but for the bathroom being ADA and NJLAD compliant, Tracey Venus would not be able to change K.V.'s diaper.

Furthermore, K.V. has standing to bring a claim against the Diner regarding the force of the doors not being ADA and NJLAD compliant. Although K.V. cannot personally push or pull the doors, the doors must be ADA and NJLAD compliant to facilitate her caregiver in assisting

K.V. into the Diner. If K.V. cannot be properly assisted into the Diner, she cannot enjoy "full and equal enjoyment of the . . . services" provided by the Diner. 42 U.S.C. § 12182(a). Accordingly, K.V. has set forth sufficient evidence and specific facts, which, for the purpose of the summary judgment motion, this Court must take as true, *see Lujan*, 504 U.S. at 561, demonstrating she has suffered an injury as to the following claims: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) doors opening force; (6) the handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp. *Spokeo*, 136 S. Ct. at 1547; *Lujan*, 504 U.S. at 561. Accordingly, Plaintiff has standing to pursue the above claims at trial.

However, where, as here, a plaintiff seeks prospective injunctive relief, she must also demonstrate a "real and immediate threat of injury in order to satisfy the injury in fact requirement." *Clark*, 255 F. Supp. 2d at 342 (citations omitted). Past exposure to illegal conduct does not in itself present a case or controversy regarding injunctive relief. *Id.* "In order to obtain standing for prospective relief, the plaintiff must 'establish a real and immediate threat that [she] would again be [the victim of the allegedly unconstitutional practice.]'" *Brown*, 819 F.2d at 400 (quoting *Lyons*, 461 U.S. at 105). Courts have considered the following four factors in determining whether a Title III plaintiff has alleged a threat of future injury that is sufficiently concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the plaintiff's frequency of nearby travel; and (4) the definiteness of the plaintiff's plan to return." *Wittmann*, 2011 WL 689613, at *5. This Court finds K.V. has satisfied these additional elements.

First, the Court must consider K.V.'s proximity to the Diner to determine if she is likely to return. The evidence presented establishes that K.V.'s residence is approximately seventeen (17)

miles from the Diner. (*See* ECF Nos. 46-2 ¶ 3 and 54-1 ¶ 3.) "[A]s the distance between a plaintiff's residence and a public accommodation increases, the potential for the occurrence of future harms decreases." *Disabled Patriots of Am., Inc. v. City of Trenton*, No. Civ. A. 07-CV-3165(FLW), 2008 WL 4416459, at *4 (D.N.J. Sept. 24, 2008). Courts have found that a distance over 100 miles weighs against the finding of a reasonable likelihood of future harm, but that a distance of 20 miles weighs in favor of a likelihood of future harm. *Id.* K.V.'s has satisfied the proximity factor.

Second, the record establishes K.V. visited the dinner sometime in 2012, in April 2013, and in the summer of 2015, one year after the lawsuit was filed. (ECF No. 54 ¶ 14.) K.V.'s past patronage undoubtedly weighs in favor of finding a reasonable likelihood of future harm.

Third, K.V.'s frequency of nearby travel weighs in K.V.'s favor. K.V. has an aunt that lives in Morganville, New Jersey, and her mother has a friend who lives in Manalapan, New Jersey, both of which are accessible via Route 18. (ECF No. 46-4 ¶ 18.) Tracey Venus takes Route 18 to travel to and from the aunt's and friend's residences and passes the Diner on her way there. (*Id.*) In fact, Tracey Venus's friend has met Tracey Venus and K.V. at the Diner. (ECF No. 46-12 at 4 (pgs. 11-12).) Accordingly, this factor also weighs in K.V.'s favor.

Lastly, K.V. has demonstrated she intends to return to the Diner. The fact K.V. has returned to the Diner in 2015, after filing this lawsuit, demonstrates her plan to return. *See Clark*, 255 F. Supp. 2d at 343 (finding that a plaintiff established a likelihood of future injury based on his previous visits to defendant's restaurants and his desire to return to those locations). Furthermore, K.V.'s familial association and Tracey Venus's friend residing near the Diner supports her contention. Tracey Venus has also stated "[w]e like the food. It's an easy spot to come to, and affordable." (ECF No. 46-12 at 11 (pg. 40)).) Notably, while this was Tracey Venus's statement and not K.V.'s, K.V. is highly disabled and her mother is her primary caretaker, who takes K.V.

with her to the Diner. Indeed, Tracey Venus's deposition testimony demonstrates that she "always" has K.V. with her. (ECF No. 46-12 at 16 (pg. 60).) The Court finds K.V. has presented sufficient evidence for standing, namely because the Diner is seventeen (17) miles from her home and Plaintiffs' intend to return. Accordingly, K.V. has constitutional standing to bring forth the following claims at trial: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) the doors' opening force; (6) the handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp.

### B. The Statute of Limitations Does Not Bar Plaintiffs' ADA Claim

In its Motion for Summary Judgment, Seville argues Plaintiffs' ADA claim must be dismissed as untimely because the claim accrued upon the completion of the alterations of the Diner in 2005. (ECF No. 60-1 at 4 to 6.) Plaintiffs argue their Complaint is timely because the statute of limitations began to run when Plaintiffs first visited the Diner in 2012, at which time Plaintiffs were subject to discrimination. (ECF No. 68-1 at 8.) In the alternative, Plaintiffs argue the continuing violation doctrine applies, and therefore the Complaint was timely filed. (*Id.* at 8-10.)

Because the ADA does not include an express statute of limitations, the Court must "borrow the statute of limitations of the most analogous state law cause of action." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). "[T]he statute of limitations applicable under Title II of the ADA . . . is the statute of limitations for personal injury actions in the state in which the trial court sits." *Id.*; *see S.B. ex rel. A.B. v. Trenton Sch. Dist.*, No. Civ. 13-949 FLW LHG, 2013 WL 6162814, at *8 (D.N.J. Nov. 25, 2013) (citations omitted) ("[T]he most appropriate limitations period is the state's applicable personal injury statute of

limitations."); *Muha v. Rutgers, State Univ. of N.J.,* No. 8–2142, 2009 WL 689738 at *3 (D.N.J. Mar. 11, 2009) ("With respect to Plaintiff's claims pursuant to the ADA . . . it is well established that the most appropriate limitations period is the state's applicable personal injury statute of limitations"). "New Jersey law requires actions for personal injuries to be filed within two years after the claim accrues." *Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, No. Civ. A. 07-2982(JAG), 2008 WL 852445, at *2 (D.N.J. Mar. 28, 2008), *aff'd sub nom.*, 693 F.3d 345 (3d Cir. 2012). Specifically, the New Jersey statute states:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued . . . .

*Id.* (quoting N.J.S.A § 2A:14-2).

"The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003). "A cause of action accrues and the statute of limitations begins to run under Titles III and IV of the ADA when the plaintiff knows or has reason to know of the injury that is the basis for the action." *Id.*; *Disabled in Action of Pa.*, 539 F.3d at 208 (citations omitted) ("[A] federal cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.").

The continuing violation doctrine applies when a plaintiff can "demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *S.B. ex rel. A.B.*, 2013 WL 6162814, at *9 (quoting *West v. Phila. Electric Co.*, 45 F.3d 744, 754 (3d Cir. 1995) (citing *Bronze Shields, Inc. v. N.J. Dep't. of Civil Serv.*, 667 F.2d 1074, 1081 (3d Cir. 1981))). "The Third Circuit has recognized that a statute of limitations may be extended based upon the continuing violation doctrine if the last act of a continuing practice of unlawful acts falls within the statute of

limitations." *Saari v. Mitre Corp.*, No. 15-3295(MAS)(DEA), 2017 WL 1197756, at *13 (D.N.J. Mar. 30, 2017). "In order to benefit from the continuing violation doctrine, a plaintiff must establish that the defendant's conduct is more than the occurrence of isolated or sporadic acts." *Id.* (citations omitted). Accordingly, the continuing violation doctrine is inapplicable where a claim is based on discrete acts "which give rise to causes of action that can be brought individually." *Id.*

There are two requirements that must be satisfied in the initial continuing violation analysis. "First, Plaintiffs must prove that at least one act occurred within the filing period. Second, Plaintiffs must establish the discrimination they experienced was 'more than just the occurrence of isolated or sporadic acts of intentional discrimination.'" *S.B. ex rel. A.B.*, 2013 WL 6162814, at *9 (quoting *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981) (citing *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977))). The Third Circuit has adopted a three-part approach to determine whether the discrimination was intermittent or an on-going pattern:

> (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citing *West*, 45 F.3d at 755)).

Here, Seville contends Plaintiffs' ADA claim accrued in 2005 because Seville's alterations to the Diner were completed in 2005 and therefore any violations "should have been known or were known to Plaintiff[s] as early as 2005 when the alterations were complete." (ECF No. 60-1 at 5.) Seville further argues that because Plaintiffs had a familial association with the area and passes the Diner regularly they should have known in 2005 that the alterations were not ADA compliant. (*Id.*) In response, Plaintiffs argue the statute of limitations was triggered when Plaintiffs

were "subject to" the discrimination in 2012, Plaintiffs' first visit to the Diner. (ECF No. 68-1 at 8.) In the alternative, Plaintiffs claim they satisfy the continuing violation doctrine. (*Id.* at 8-10). The Court finds the ADA claim was commenced timely.

Seville's contention that "[t]he claim accrues upon the completion of the alterations" is without merit. (ECF No. 60-1 at 4 (citing *Disabled in Action of Pa.*, 539 F.3d at 209-10).) *Disabled in Action of Pennsylvania* interpreted 42 U.S.C. § 12147, which specifically addresses public transportation services. The portion of 42 U.S.C. § 12147 at issue in the appeal provides:

> With respect to alterations of an existing facility or part thereof used in the provision of *designated public transportation services* that affect or could affect the usability of the facility or part thereof, it shall be considered discrimination, for purposes of section 12132 of this title and section 794 of Title 29, for a public entity to fail to make such alterations (or to ensure that the alterations are made) in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations.

(emphasis added). This provision is not at issue before this Court and Seville has failed to provide authority demonstrating Plaintiffs' claim only accrues upon the completion of the Diner's alterations. The Court will apply the general rule that "the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Burkhart*, 70 F. App'x at 53. "A cause of action accrues and the statute of limitations begins to run under Titles III and IV of the ADA when the plaintiff knows or has reason to know of the injury that is the basis for the action." *Id.*

The Court is mindful that "[t]he ADA is a remedial statue, designed to eliminate discrimination against the disabled in all facets of society," and as such, "it must be broadly construed to effectuate its purposes." *Kinney v. Yerusalim*, 812 F. Supp. 547, 551 (E.D. Pa. 1993) (citing *Tcherepnin v. Knight*, 389 U.S. 332, 335, *aff'd*, 9 F.3d 1067 (3d Cir. 1993)). The Court finds the statute of limitations began to run in 2012, when Plaintiffs knew of the Diner's violations.

Seville fails to prove Plaintiffs should have known the Diner was not ADA compliant prior to Plaintiffs' first visit in 2012. Even though Plaintiffs lived in Franklin Township since August 1996, K.V.'s aunt has lived in Morganville since 1991, Tracey Venus's friend has lived in Manalapan since 1998, and Route 18 is a direct route between Plaintiffs' home and relative's and Tracey Venus's friend home, it would be unreasonable for the Court to infer Plaintiffs knew the Diner was not ADA compliant by merely driving past it on the highway. (ECF Nos. 54 ¶¶ 2, 4, 5 and ECF No. 68-2 ¶¶ 2, 4, 5.) Accordingly, Seville's Motion for Summary Judgment on the statute of limitations claim is **DENIED.**

### C. ADA Claim

Plaintiffs argue the following portions of the Diner are not compliant with the ADA or NJLAD: (1) rear/back elevated dining area; (2) rear dining area adjacent to the self-serve salad bar; (3) self-serve salad bar island; (4) sales counter; (5) doors opening force; (6) coat closet area; (7) public bathrooms' vestibule area; (8) public women's bathroom; (9) public men's bathroom; (10) exterior pedestrian ramp; (11) exterior accessible route and handicap parking spaces; and (12) accessible stairs. (*See* ECF No. 46-3; ECF No. 46-29; ECF No. 68; and ECF No. 68-1.) Seville contends the Diner is either compliant with the ADA and NLAD, compliant to the maximum extent feasible, or that certain portions were not required to be compliant with the ADA or NJLAD. (*See* ECF No. 46-33; ECF No. 60-1; ECF No. 63; and ECF No. 69.) Because this Court has already determined K.V. lacks standing to pursue various claims, this portion of the opinion will only address the remaining claims: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) doors opening force; (6) the handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp.

Under Title III of the ADA, it is unlawful for a place of public accommodation to discriminate against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, or advantages, or accommodations[.]" 42 U.S.C. § 12182. In order to succeed under Title III of the ADA, a plaintiff must prove that:

> (1) he was discriminated against on the basis of disability;
> (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation;
> (3) By any person who owns, leases (or leases to), or operates a place of public accommodation.

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 514 (D.N.J. 2000), *opinion amended on reargument*, 130 F. Supp. 2d 610 (D.N.J. 2001). Seville concedes K.V. is disabled within the meaning of the ADA and that the Diner is a place of public accommodation. (ECF No. 63 at 13.) Accordingly, the Court will only address whether or not K.V. was discriminated against in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Diner.

"The ADA is a complex law codified in numerous statutes in the United State Code." *Heightened Indep. & Progress, Inc.*, 693 F.3d at 350. The Department of Transportation has promulgated regulations to implement those statues. *Id.* Pursuant to 42 U.S.C. § 12204, the Architectural and Transportation Barriers Compliance Board has issued ADA Accessibility Guidelines ("ADAAG"). *Id.* The Department of Justice also produces an ADA technical assistance manual, which provides further guidance. *Id.* The ADAAG imposes different obligations on different kinds of construction projects. *Id.* "There are two standards of compliance under the ADA: the new construction standard and the alteration standard." *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 168 (3d Cir. 2006).

"New construction is the highest standard, and it applies to public accommodations designed or constructed after January 26, 1992, and to the portion of a facility altered after that date." *Id.*; *see* 42 U.S.C. § 12183(a); H.R.Rep. No. 101–485(III) at 60, reprinted at 1990 U.S.C.C.A.N. 445, 483 (explaining that "[b]ecause it costs far less to incorporate accessible design into the planning and construction of new buildings and of alterations [as compared to retrofitting existing structures], a higher standard of 'readily accessible to and usable by' persons with disabilities has been adopted in the ADA for new construction and alterations"); and 28 C.F.R. Part 36, App. B, § 36.402 (stating that, with respect to altered portions, "[t]his part does not require alterations; it simply provides that when alterations are undertaken, they must be made in a manner that provides access") (emphasis added). The new construction standards can be found in 28 C.F.R. Part 36, and the ADAAG are set forth in Appendix A of Part 36.

When a public accommodation is a new construction the Act requires that it be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter." 42 U.S.C. § 12183(a)(1). The parties agree the Diner is not a new construction. Accordingly, the Court will focus its analysis on alterations and existing facilities.

With respect to a facility that is altered, the alteration must be made to the "maximum extent feasible." *Id.* § 12183(a)(2). If the alteration could

> affect usability of or access to an area of the facility containing a *primary function*, the entity shall also make the alterations in such a manner that, to the *maximum extent feasible*, the *path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations . . . are not *disproportionate* to the overall alterations in terms of cost and scope . . . .

*Id.* (emphasis added); 28 C.F.R. § 36.402(a)(1) ("Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."). "[A]n alteration is a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b).

> Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the plan configuration of walls and full-height partitions. Normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility.

*Id.* § 36.402(b)(1). If existing elements, spaces, or common areas are altered, each should comply with the applicable provisions of Appendix A to this part. *Id.* § 36.402(b)(2). "A 'primary function' is a major activity for which the facility is intended." *Id.* § 36.403(b). For the purposes of this case, areas that contain a primary function include, but are not limited to, "the dining area of a cafeteria." *Id.*

A "path of travel" is defined as "a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility." *Id.* § 36.403(e). A "path of travel" alteration is disproportionate to the cost of the overall alteration "when the cost exceeds 20% of the cost of the alteration to the primary function area." *Id.* § 36.403(f). Nonetheless, a place of public

accommodation must still provide accessible features in the event of disproportionality "to the extent that it can be made accessible without incurring disproportionate costs." *Id.* § 36.403(g).

The phrase "to the maximum extent feasible" "applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards through a planned alteration." *Id.* § 36.402(c). When an existing facility makes it virtually impossible to fully comply, "the alteration shall provide the maximum physical accessibility feasible." *Id.* "Any altered features of the facility that can be made accessible shall be made accessible." *Id.*

Existing facilities also must comply with the ADA and that obligation is governed by the barrier removal provision. The ADA's barrier removal provision requires the removal of structural barriers in existing facilitates if it is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "[R]eadily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). To determine whether an action is readily achievable, the following factors should be considered:

> (A) The nature and cost of the action needed under this chapter;
> (B) The overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> (C) The overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (D) The type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.* However, if the existing facilitates are altered, they must conform to the alteration standard.

*Regents of Mercersburg Coll.*, 458 F.3d at 169.

Based on the above analysis, this ADA claim proceeds as a four-part inquiry: (1) whether there were alterations made to the Diner after January 26, 1992; (2) whether the alterations were made to a "primary function" of the Diner; (3) if primary functions of the Diner were altered, whether the "path of travel" to the altered area and the bathrooms were "readily accessible" or could have been made readily accessible without being "disproportionate" to the overall alterations in terms of cost and scope; and (4) if no alterations were made whether the Diner could have made "readily achievable" accommodations.

Plaintiffs argue the primary function area of the Diner is the dining room and that it was altered in 2004. (ECF No. 46-3 at 33 to 34.) They further argue that, because the dining room was altered, "the entire path of travel, which includes bathrooms, [needs to] be altered." (*Id.* at 34.) Furthermore, they argue that, because the bathrooms, exterior vestibule, and the exterior ramp were all independently altered, those portions are required to be ADA compliant regardless of whether they constitute the "entire path of travel." (*Id.*) In the alternative Plaintiffs argue, "[e]ven if there were no alterations, the Diner still had an obligation to remove all architectural barriers when doing so was 'readily achievable.'" (ECF No. 46-3 at 45.)

Seville "concedes that the primary function area is the 'dining room.'" (ECF No. 63 at 16.) However, Seville argues "that not all of the proposed alterations as stated within the architectural drawings took place" in 2004. (ECF No. 63 at 18.) Further, it maintains many of the portions of the Diner Plaintiffs take issue with are ADA compliant or are "readily accessible" to the maximum extent feasible. (*Id.* at 21-31 and ECF No. 60-1 at 20 to 33.)

The Court finds there are genuine issues of material facts in dispute that prevent the Court from conducting the four-part inquiry. As a preliminary matter, there is a genuine issue of material fact as to what was altered or renovated in 2004. Alterations and existing facilities are subject to

different standards under the ADA. Alterations must be made to the "maximum extent feasible," 42 U.S.C. § 12183(a)(2), while existing facilities are governed by the barrier removal provision, requiring the removal of structural barriers in existing facilitates if it is "readily achievable," *id.* § 12182(b)(2)(A)(iv). Plaintiffs' briefs and expert reports articulate many proposed alterations the Diner considered making in 2004, but do not articulate which of those proposed changes were actually executed. (ECF No. 46-3 at 35 to 43; *see* ECF No. 46-29.) By way of one example, Plaintiffs state that an agreement between Kullman Industries, Inc. and Spathi Corporation D/B/A Seville Diner "shows there was a *planned* alteration." (ECF No. 46-3 at 39.) Seville argues "that not all of the proposed alterations as stated within the architectural drawings took place." (ECF No. 63 at 18.) Specifically,

> 7. The bathroom vestibule tile floor and the wood walls were not changed in the 2004 renovation. The configuration and size of the bathroom vestibule did not change in the 2004 renovation either. The tile floor and wood paneling walls were changed in the 1990 renovation and have remained the same to the present day.
> . . . .
>
> 15. The fixed booths in the rear elevated dining room and the dining area where the salad bar is located are the same type of booths. They all have the same distinct purple fabric backing and are of the same shape and design. These booths were installed during the renovation in 1990. Both the booths in the rear elevated dining area and the dining area where the salad bar is located were not changed during the 2004 renovation.

(ECF No. 55 ¶¶ 7, 15.)  On this record, it is unclear which standard must be applied to the claims at issue—the alteration or existing facility standard. Because there are genuine issues of fact as to which portions of the Diner were actually altered in 2004, the Court cannot grant summary judgment as to either party. *See Anderson*, 477 U.S. at 248, 249-52 (finding that where material issues of fact exist, the Court cannot grant summary judgment).

This Court acknowledges Plaintiffs' argument that Seville admitted it made alterations to at least the booths and therefore Seville is required to make the path of travel, bathrooms, and handicap parking spaces readily accessible. (ECF Nos. 68 at 25 and 68-1 at 30.) Indeed, Seville acknowledges an alteration was made to the booths, stating "[t]he only booths that were altered and replaced in 2004 was everything in front of the wood floor to the front door and by the bathroom" and "[t]he fabric, type of wood, and design of the 1990 booths are different than 2004 booths."(ECF No. 55 ¶¶ 16 to 17.)   The Court further recognizes that because the booths were altered in the dining room, a primary function, the path of travel to the altered area and the bathrooms must be readily accessible if such alterations would not be disproportionate to the overall alterations. 42 U.S.C. § 12183(a)(2). Nevertheless, the Court finds there are abundant issues of material facts in dispute as to whether the bathrooms, ramps, handicap parking spaces, and doors opening force are ADA compliant or compliant to the maximum extent feasible and whether or not compliance would be disproportionate to the altered area in the primary function. (*Compare* ECF Nos. 46-29 to 46-32, *and* 46-34 to 46-36 *with* ECF No. 46-33; and *compare* ECF Nos. 46-2 and 68-2 *with* ECF Nos. 54 and 60.)

The following are some examples. Plaintiffs argue the public bathrooms' vestibule area is not compliant:

> The interior dimensions to the vestibule were measured to be 5'-5 ¼" (65 ¼") in width between the Women's Room door wall and the Men's Room door wall. The depth was measured to be approximately 3'-10 ¼" thereby precluding the required 5'-0" (60") diameter turning space to allow for the proper door approaches to each respective bathroom entry door. The out-swing door and its approach from the dining area was also measured. The out-swing door was measured to be approximately 34 7/8" in width while having the required 32" clear opening dimension with the door in a 90 degree open position.

(ECF No. 46-29 at 8.) Seville argues "[t]he figure below from the 1991 ADA Guidelines for Accessible Deign which were the standards used at the time of the 2004 renovation, shows a requirement of 36" inch width on each leg of the 'T' shaped space. The width of the exiting conditions of one leg is 46" and the other is 64" . . . satisfying the requirement." (ECF No. 46-33 at 11.)

Regarding the exterior pedestrian ramp, Plaintiffs argue:

> Based on my field review and review of drawing SK-1, the existing ramp has an approximate overall length of 39'-1 1/8", without an intermediate landing, and a vertical rise of approximately 3.185' (feet) translating to a calculated slope of 1:12.274. I recorded the bottom landing's rise parallel to the ramp at its bottom as 0.395' while having a run of 5.5' feet translating to a calculated slope of 1:13.924. As for the cross-slope, I recorded the bottom landing's cross-rise perpendicular to the ramp at its bottom as 0.3' while having a cross-run of 4.7708' translating to a calculated slop of 1:15.9. Accordingly, the ramp's bottom landing surface pitches in both directions in excess of the maximum permitted slope and cross-slope of 1:50 as defined by the ADA and Barrier Free Code standards.

> Regarding the ramp's top landing, I found this landing to be approximately level and therefore, compliant with the ADA and Barrier Free Code standards for its surface slope and cross-slope.

(ECF No. 46-29 at 11.) Seville claims the ramp is ADA compliant to the maximum extent feasible. (*See* ECF No. 46-33.) In 2004, Seville attempted to renovate the ramp. (*See* ECF No. 63 at 23 and ECF No. 46-33 at 22 to 23.) Originally, Seville's 2004 renovations

> called for a 30 ft. ramp in length, 30 in. height with a 1:12 slope entirely compliant pursuant to the ADA guidelines. Unfortunately, the Township officials and prior architect discovered that this was not technically feasible given the height of the building at 39 inches and the location site conditions amongst many other additional salient factors . . . that prevented the original plans and that of a ramp with an intermediate landing. Therefore, it was determined to keep the 39 ft. length and make the slope compliant with a 1:12 slope.

(ECF No. 63 at 23 to 24.) Seville's expert further notes "that if [the ramp] was extended 5 feet for a lading, the bottom exit from the landing would create a hazard for anyone using a wheelchair on the ramp." (ECF No. 46-33 at 22.) As such, there are genuine issues of material fact as to whether it was feasible to make the ramp compliant.

With respect to the exterior route and parking spaces, Plaintiffs' expert, in part, stated:

> In reviewing the vertical elevations noted and recorded in SK-1, I found that the parking lot surface's slopes and cross-slopes, within the (3) accessible spaces, were not in compliance with the ADA and Barrier Free Code standards which require that the surface slopes, in all directions, not to exceed 1:50. The parking stall's slope, parallel to the space and adjacent to the ramp's bottom landing, was measured to be approximately 0.982' over its 18'-10" (18.8333') length. This slope calculated to be approximately a 1:19.18, contrary to the maximum permitted slope of 1:50. As for this parking stall's cross-slope, perpendicular to the space, this cross-slope calculated to be approximately 1:66 and therefore, compliant. However, the parking stall's cross-slope, adjacent to the entry steps, was found not to be compliant having a calculated cross-slope of approximately 1:34.59 (9.1667' ÷ 0.265'). In reviewing the existing accessible route from the parking spaces and non-compliant/non-existent access aisles, to the ramp's bottom landing the existing surface slopes were also found not to be in compliance with the 1:50 slope limit.

(ECF No. 46-42 at 13 (citations omitted).) Seville's expert responded by stating, in relevant part:

> As to the handicap parking spaces, there were many discussions between the Planning Board and the architect with regard to the size of the parking spaces. If the spaces were made fully compliant, the handicap parking would project into the driveway that runs along the side of the building, exposing persons in wheelchairs to a hazardous situation.

(ECF No. 46-33 at 25.) Again, there is an issue of fact as to whether compliance was feasible.[3]

---

[3] Because substantial genuine issues of material fact exist, this Court will not articulate every one for efficiency purposes. All material issues of fact regarding the dining area, bathroom vestibule area, women's bathroom, doors opening force, handicap parking, and ramp can be found in Plaintiffs' and Seville's expert reports. (*Compare* ECF Nos. 46-29 to 46-32 *and* 46-34 to 46-36 *with* ECF No. 46-33.)

Moreover, there are genuine issues of material fact as to which alterations were actually executed in 2004, specifically which alterations were executed in the dining room—the primary function of the Diner. Therefore, the Court cannot evaluate whether or not alterations to the path of travel to the altered area, bathrooms, and handicap parking spaces would be disproportionate to the overall alterations in terms of cost and scope as required by 42 U.S.C. § 12183(a)(2).

Plaintiffs argue the disproportionality defense is not applicable because Plaintiffs "do[] not solely reply upon section 28 C.F.R. § 36.403, although it certainly does apply." (ECF No. 68 at 25.) Specifically, Plaintiffs argue the bathrooms, parking areas, and pathway of travel were independently altered and thus required to be compliant to the "maximum extent feasible" pursuant to 42 U.S.C. § 12183(a)(2) and 28 C.F.R. § 36.402. (*Id.*) Again, there are genuine issues of material fact as to what was actually altered in 2004. Accordingly, at this time the Court cannot grant summary judgment. Because there are a significant amount of material issues of fact in dispute, Plaintiffs' and Seville's motions for summary judgment are **DENIED**. *Anderson*, 477 U.S. at 248, 249-52.

Neither Plaintiffs nor Seville have demonstrated a basis for their motion on the NJLAD claims. *Celotex Corp.*, 477 U.S. at 323 (noting that the party moving for summary judgment has the initial burden of showing the basis for its motion.) Plaintiffs' and Seville's briefs only make sporadic references to the NJLAD.[4] Plaintiffs have not effectively demonstrated which portions of the NJLAD were violated, if any, and Seville has not demonstrated that it has fully complied with the NJLAD. Nevertheless, because the record is replete with material issues of fact as to the measurements of every structural space and element in the Diner, summary judgment as to all

---

[4] Plaintiffs' Motion for Summary Judgment allocates one point heading to the New Jersey Barrier Free Subcode and briefly discusses the NJLAD, but does not articulate which portions of the NJLAD the Diner violated and does not provide facts to support its argument. (ECF No. 46-3.)

NJLAD claims is **DENIED**. (*Compare* ECF Nos. 46-29 to 46-32 *and* 46-34 to 46-36 *with* ECF No. 46-33.)

## IV. PLAINTIFFS' EXPERT

Seville argues Mr. Kusmick's declaration opposing its Motion ought to be considered a "sham affidavit" by this Court (ECF No. 69 at 14), and that he should be disqualified because of his "newly discovered personal and financial arrangement." (ECF No. 63 at 38).

To the extent Seville seeks to disqualify or strike any of Plaintiffs' expert reports or declaration, it has not properly done so. Admission of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 397 Fed. App'x 797, 799 (3d Cir. 2010).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set forth factors to serve as guideposts for the district courts in determining the admissibility of expert scientific testimony. The factors have been summarized in this Circuit as follows: "(1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; and (4) whether the technique has been generally accepted in the proper scientific

community." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (citing *Daubert*, 509 U.S. at 593-94.)

Additionally, the Third Circuit supplemented the *Daubert* factors with three (3) additional factors a district court might use in evaluating expert testimony: qualifications, reliability, and fit. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994)); *Heller*, 167 F.3d at 152 (citing *Paoli*, 35 F.3d at 742 n.8). These factors, when evaluated, comprise and consider the *Daubert* factors and are therefore used in this District. *See Paoli*, 35 F.3d at 742. Seville does not address any of these factors. If Seville wishes to challenge Plaintiffs' expert on his conclusions, it is permitted to do so on cross-examination at trial. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) ("The analysis of the [experts'] conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.") (quoting *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997))). Accordingly, Seville has not properly moved to disqualify Mr. Kusmick's reports or declaration.

Similarly, to the extent Seville wishes to challenge Mr. Kusmick's bias, it is permitted to do so on cross-examination at trial. *Rao v. Hillman Barge & Const. Co.*, 326 F. Supp. 1091, 1093 (W.D. Pa. 1971), *aff'd*, 467 F.2d 1276 (3d Cir. 1972) (finding "an opponent may cross-examine an expert on matter of credibility, interest or bias"). Accordingly, Seville's Motions to disqualify Mr. Kusmick or his reports and declaration are **DENIED.**

## V. ATTORNEYS' FEES, EXPERT FEES, EXPENSES, AND COSTS

Plaintiffs argue they are entitled to attorneys' fees, expert fees, expenses and costs because they are a prevailing party and because Seville has already made some alterations to the Diner after Plaintiffs filed this lawsuit. (ECF No. 46-3 at 49.) Specifically, Plaintiffs argue Seville made

changes to coat hooks and the bathrooms. (*Id.*) Seville argues Plaintiffs are not entitled to attorney's fees and disputes that it has made alterations to the Diner. (ECF No. 63 at 37).

The ADA states that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Thus, in determining whether fees should be awarded, the Court must first decide whether the plaintiff prevailed within the meaning of the statute. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Because the Court has denied Plaintiffs' Motion for Summary Judgment in all respects, Plaintiffs are not prevailing parties entitled to attorney's fees.

## VI.    COMPENSATORY FEES

Plaintiffs argue they are also entitled to compensatory damages pursuant to N.J.S.A. § 10:5-13. (ECF No. 46-3 at 51.) Seville does not oppose this argument. New Jersey Statutes Annotated Section 10:5-13, a provision of the NJLAD, provides "prevailing plaintiffs" with "[a]ll remedies available in common law tort actions." Because this Court has denied Plaintiffs' Motion for Summary Judgment in all respects, Plaintiffs are not prevailing parties entitled to compensatory fees.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (ECF No. 46) is **DENIED,** Seville's Motion for Summary Judgment (ECF No. 60) is **GRANTED** in part as follows and **DENIED** as to all other respects. Specifically, this Court **GRANTS** summary judgment in favor of Seville as to all claims asserted by Tracey Venus on her own behalf and as to all claims asserted by K.V. regarding ADA and NJLAD violations with the salad bar island, sales counter, coat closet area, stairs, and public men's bathroom. This Court finds K.V. has standing

only to purse the following claims at trial: (1) the rear/back elevated dining area; (2) the rear dining area adjacent to the self-serve salad bar; (3) the public bathrooms' vestibule area; (4) the public women's bathroom; (5) doors opening force; (6) handicap parking spaces; and (7) anything relating to the exterior pedestrian ramp. An appropriate Order will follow.


**Date: May 31, 2017**                                    */s/ Brian R. Martinotti*_____
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**